Filed 10/23/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE ex rel. KAMALA HARRIS and XAVIER BECERRA, as Attorneys General, etc., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> WILLIAM SHINE, Individually and as Trustee, etc., et. al., <br><br>     Defendants and Respondents. | A148505 <br><br> (Marin County <br> Super. Ct. No. PRO 1305238) |

    William B. Shine was the trustee of a family trust. Pursuant to statutory authority for supervision of charitable trusts (Gov. Code, §§ 12591, 12598), the Attorney General petitioned for Shine's removal and for surcharge based on his mismanagement of the trust, and an interim substitute trustee was appointed. Shine successfully petitioned the trial court for advanced fees from the trust for defense of the petition, subject to repayment if he was ultimately found not entitled to indemnification. The People appeal. Because the probate court applied an incorrect legal standard, failing to weigh all relevant factors, in making the pendente lite fee award, we reverse and remand for reconsideration.

## I.   BACKGROUND

### *The 1995 Trust*

    Robert A. and Eva M. Lindskog (Robert and Eva) established a revocable trust in 1995 (Trust) as an estate planning vehicle. As later amended, the Trust provided that on Eva's death all but $1 million of her share of trust property "shall be irrevocably set aside for charitable purposes and held as the LIVEWIRE LINDSKOG FOUNDATION"

1

(Foundation).[1]  Robert and Eva designated themselves original cotrustees and Shine successor trustee.  Robert resigned in 2001 due to dementia, and Shine became the sole trustee after Eva's death in early 2004.  Trust assets were worth about $40 million on Eva's death, consisting mostly of real property holdings.

*2005 Petition and 2008 Settlement*

In 2005, Robert's conservator objected to Shine's accounting, petitioned to remove Shine as trustee and surcharge him for mismanagement, and charged him with financial elder abuse.  The probate court ordered an accounting, a valuation of Trust assets, and a division of assets between Robert's and Eva's estates.  Eva's estate was valued at about $20 million.  A 2008 settlement, approved by the court, ratified prior distributions to Robert, distributed an additional $1 million to Robert, and confirmed the remainder of the Trust estate as Eva's share.[2]  The settlement required Shine to "form the Foundation and allocate and distribute to it the remaining assets pursuant to the provisions of the Trust."

In June 2009, Shine filed articles of incorporation for the Foundation.  However, he failed to appoint officers or directors, apply for tax-exempt status, or transfer Eva's estate to the Foundation.  In 2011, after the Attorney General initiated an audit of the

---

[1] A governing document executed contemporaneously with the third amendment to the Trust provided that the Foundation's purpose was to advance "efforts in the fields of the fine arts, education, human resources development, environmental conservation and medicine, and advanc[e] the interests of other charitable organizations engaged in the foregoing fields . . . .  Settlor expresses her desire that the Trustees give due consideration to the following organizations":  Marin County Hospice, Alzheimer's Association North Bay Chapter (for use only in Marin County), The Buckelew House Program (for use only in Marin County), and Marin General Hospital.

[2] Section 1.8 of the Trust instrument provides:  "[E]ach subsequent trust created hereunder shall be referred to by adding the name of the beneficiary thereof, or any other designation provided herein."  The parties apparently agreed to refer to Eva's share of the Trust property as the Eva Lindskog Trust and implicit in their arguments on appeal is the assumption that the administration of the Eva Lindskog Trust continues to be governed by the 1995 Trust instrument as amended.  Therefore, we will continue to refer to it simply as the Trust.

Trust, Shine appointed two long-time friends, Marty Mancebo and Thomas Harrington, as cotrustees.

<em>2013 Petition by Attorney General</em>

In December 2013, the Attorney General petitioned on behalf of the People of the State of California for removal of the trustees, appointment of a receiver, and an accounting.[3] The People argued that Shine failed to fulfill his duties as trustee following Eva's death in 2004 and the settlement in 2008 to obtain a valuation of Trust assets for the purpose of dividing them between the Foundation and Trust, create the Foundation, fund the Foundation from Eva's share of the assets, and transfer title to real property assets to the Foundation. The People also alleged Shine engaged in prohibited self-dealing by employing his own firm as a tax consultant for the Trust; improperly prepared tax returns and falsely reported a $7 million donation to the Foundation on the 2005 return for Eva's estate; failed to accurately account for expenses and income in the Trust or maintain written records of his actions as trustee; and improperly used Trust assets to make loans to business associates and friends, failed to exercise due diligence in doing so, and on some occasions had to foreclose on property securing those loans. The People brought causes of action for breach of fiduciary duty and removal of trustees (§§ 15642, 16049, 16420, 17200), an accounting (§§ 16420, 17200), and removal of trustees and appointment of a receiver (§§ 16420, 17200).

At a February 2014 hearing on the People's petition, the court stated its intention to deny the trustees' request for a continuance of the hearing unless the trustees agreed to relinquish control over the Trust in the interim. The trustees (hereafter former trustees) agreed, and the court appointed David A. Bradlow as temporary trustee.

Bradlow filed an initial status report in May 2014. He reported that "at a minimum . . . the affairs of the trust have not been managed appropriately." The former

---

[3] The Attorney General has broad powers to supervise charitable trusts (Gov. Code, §§ 12591, 12598), including the power to petition for removal or surcharge of trustees (*id.*, § 12598, subd. (a)(4); Prob. Code, § 17200, subd. (b)(10), (12)). Further undesignated statutory references are to the Probate Code.

trustees provided a list of key personnel involved in Trust affairs that was "replete with inaccuracies," including misidentification of the managers of real property assets. Tenants in a Berkeley property were paying $100 and $400 a month in rent; the property had a high vacancy rate and unreported landmark status that threatened insurance coverage; and the property, which was acquired after a 2012 foreclosure, was worth substantially less than the amount of outstanding debt to the Trust. A Mill Valley rental complex lost more than $115,000 in 2013, and records were inconsistent as to the Trust's ownership interest in the corporation that owned the property. An initial review of the Trust's cash flow disclosed a $120,000 payment to Shine, $225,000 in payments to attorneys, and $1 million in checks to payees identified as "Miscellaneous" in the accounting system. Bradlow's seventh status report in January 2016 reported: "[T]he condition of the records for the Trust was a problem for the Trustee. In many instances, to understand an asset and/or address that asset, an independent investigation had to be conducted . . . . [D]uring the [former trustees'] administration, important tax issues and deferred maintenance issues were not addressed."

*2016 Petition for Fees*

In March 2016, the former trustees petitioned the court to instruct Bradlow to use Trust assets to reimburse their past defense costs (personally paid by Shine) and pay their future attorney fees and costs, as the surcharge petition was expected to go to trial. They claimed that, despite extensive discovery, the Attorney General had not uncovered evidence of misappropriation, asset diversion, fraud or wrongdoing by the former trustees, and "the only remaining allegations to which there is any potential liability . . . arise out of their acts (and omissions) taken (or not) during the course of their administration of the Trust," including their alleged failure to fund the Foundation, failure to operate the Trust as a charity, and failure to maintain accurate books and records. They argued that their "actions in administering the Trust have at all times been reasonable and prudent exercises of the broad discretion afforded to them by the Trust and under the Probate Code[, and] . . . were in good faith and on the advice of counsel . . . ." Specifically, they did not fund the Foundation "[b]ecause the Trust estate

4

included primarily encumbered real estate assets that could not be used to fund a charitable foundation, and the Trust documents contained a series of provisions discouraging diversification of assets, [so Shine] and his attorneys were unsure how to proceed. . . . [¶] . . . [An attorney, Laura J. O'Kane,] advised [Shine] to delay funding the Foundation on the basis that it would risk grave tax consequences due to the passage of time spent in the intervening litigation. . . . [Accordingly,] the Former Trustees . . . began making charitable gifts in conformity to the legal required percentage as advised by O'Kane[,] . . . [¶] . . . operating the administrative Trust as if a properly registered charitable Foundation . . . ." As authority for an interim fee award, the former trustees cited the Trust's indemnification provisions, Probate Code provisions authorizing payment of trustees' legal expenses, and case authority they claimed authorized payment of attorney fees incurred by trustees who had been removed, had resigned, or were fighting removal (*Kasperbauer v. Fairfield* (2009) 171 Cal.App.4th 229, 232, 234–235 (*Kasperbauer*); *Estate of Cassity* (1980) 106 Cal.App.3d 569, 574; *Hollaway v. Edwards* (1998) 68 Cal.App.4th 94, 95–96).

In opposition, the People argued the former trustees were not entitled to fees because their defense of the petition was not for the Trust's benefit. On the contrary, the former trustees "performed their fiduciary duties with gross negligence and in some cases willfully refused to carry out the trust provisions." The People specifically contested the former trustees' claim that Shine reasonably relied on the advice of O'Kane to delay funding the Foundation and liquidating the real estate assets: "Shine hired the attorney [(Jake Walker)] who drafted Eva's trust instruments, but [Shine] did not share with attorney Walker his apparent confusion over perceived inconsistencies within the trust instrument, nor did he share any confusion with his later retained attorneys at Adler Colvin. Shine also never filed a petition for instructions with the court during the ten-year period that he acted as trustee." The People described numerous instances of wrongdoing by Shine, *which it supported by citations to evidence*. Shine never established the Foundation as required by the Trust document and the 2008 settlement; falsely reported a $7.8 million donation to the Foundation on a 2005 tax return for Eva's

5

estate, failed to secure a $50,000 tax refund for the Trust, and prepared noncompliant tax returns for a real estate entity owned by the Trust; failed to liquidate the real estate entity as advised by tax counsel; failed to maintain accurate accounts such that the recipients of almost $2.5 million in Trust checks were unidentified; shortly after Eva's death, almost tripled the compensation of a property manager of one of the trust's real estate assets and, contrary to the advice of counsel, thereafter hired a friend as property manager under exorbitant terms that resulted in approximately $800,000 in compensation over three years; and loaned Trust funds to friends and business partners without exercising due diligence.

In reply, the former trustees did not submit any evidence disputing the Attorney General's allegations. They again argued the Trust indemnity provisions and *Kasperbauer, supra,* 171 Cal.App.4th 229, supported an award of interim fees pending a determination of liability.

In an April 28, 2016 written order (Fee Order), the court granted the former trustees' petition. After summarizing the People's allegations of wrongdoing under the heading, "Relevant Factors Considered," the court wrote that it "believes the Attorney General has a strong case." Nevertheless, the court ruled that, because the allegations were still unproven and the alleged misconduct "appear[s] to be encompassed by the plain language of the Trust indemnity provisions," the former trustees were entitled to fees under the indemnity provisions. Further, "[t]he court believes *Kasperbauer* supports a trustee's right to indemnit[y] against mere accusations until . . . the [opposing party] proves the merits of the accusations at trial. [¶] . . . [¶] . . . Finally, in exercising its discretion in the present case, the court considers the inequity of forcing the former trustees to fund their own defense against the unlimited resources of the Attorney General's office." After unsuccessfully seeking writ relief, the People filed this appeal of the Fee Order.

In May 2016, Bradlow applied ex parte for instructions on how to process the former trustees' fee requests. He had received billing statements for $637,428.80 in past attorney fees and sought direction on whether to pay the amounts requested or undertake

6

a reasonableness review with notice to the People. Bradlow also asked whether he should require some guarantee of repayment if the court intended the fees to be interim only, subject to repayment if ultimately disallowed. The Attorney General then sought to stay enforcement of the Fee Order pending the appeal, and the former trustees applied for relief from any automatic statutory stay. In July 2016, the trial court denied all three petitions and ruled the Fee Order was stayed pending appeal pursuant to section 1310, subdivision (a). Mancebo and Harrington were subsequently dismissed from the case, leaving Shine as the sole respondent.[4]

## II.    DISCUSSION

A.    *Failure to Provide Transcript*

Shine argues the People's failure to obtain a court reporter for the fee petition hearing, or in the alternative obtain an agreed or settled statement of the hearing for the appellate record (see Cal. Rules of Court, rule 8.130(h)), "compels either an affirmance of the order below or a dismissal of the appeal." We disagree.

Shine invokes the rule that " '[i]n the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' [Citation.] . . . ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' " (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) Applying this principle, courts have regularly refused to reach the merits of appellants' claims in the absence of a reporter's transcript or an agreed or settled statement. (*Id.* at p. 186.)

---

[4] On September 5, 2017, Shine reported that trial on the surcharge petition was scheduled to begin October 30. He moved for an order staying trial court proceedings and expediting the appeal. We scheduled oral argument for October 19 and denied the motion.

"If an appellant intends to raise any issue *that requires consideration of the oral proceedings* in the superior court, the record on appeal must include a record of these oral proceedings . . . ." (Cal. Rules of Court, rule 8.120(b), italics added.) Here, the People's arguments on appeal do not require consideration of colloquy during hearing on the motion. The appellate record includes the parties' briefs in support of and in opposition to the fee petition, as well as a written decision by the trial court explaining its reasoning. Shine does not argue that the trial court's order should be affirmed based on factual matters or equitable considerations that are not reflected in the written order but would have been reflected in a transcript of the hearing. On the contrary, Shine argues the Fee Order should be affirmed because of the Trust's indemnity provisions and "because Shine's governmental adversary was pouring vast resources into this litigation, threatening grave prejudice to Shine as the trial approached." These are the same grounds as stated in the trial court's written ruling. Because the absence of a reporter's transcript does not impair our review of the Fee Order, there is no ground for declaring a forfeiture by the People. (See *511 S. Park View, Inc. v. Tsantis* (2015) 240 Cal.App.4th Supp. 44, 47, fn. 1 [reviewed without reporter's transcript where no "party took a position at the argument different from that taken in the documents relating to the motion for attorney fees filed in the trial court"]; *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 696 [reviewed without reporter's transcript where "none of the parties relie[d] on anything that occurred during argument [before the trial court]"]; cf. *Foust v. San Jose Construction Co., Inc., supra,* 198 Cal.App.4th at pp. 187–188 [absence of reporter's transcript prevented adequate review of substantial evidence argument]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 [absence of reporter's transcript prevented adequate review where trial court's written order did not explain how fee award was calculated].)

B.     *Interim Fee Award*

The People argue the Probate Code does not authorize the use of trust assets to fund a former trustee's defense against a claim of malfeasance, and the Trust's indemnity provisions do not authorize payment of attorney fees before a determination of liability. Shine defends the Fee Order under the Trust provisions and the court's equitable

8

discretion. We conclude the trial court here did not apply a correct legal standard for an award of pendente lite fees. We therefore reverse and remand for reconsideration. We first consider a probate court's authority to award fees generally and then turn to the issue of pendente lite fees.

"Allowance of litigation expenses rests in the sound discretion of the trial court, whose ruling will not be disturbed on appeal absent an abuse." (*Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221, 1230.) However, a trial court abuses its discretion when it applies the wrong legal standards. (*Zurich American Ins. Co. v. Superior Court* (2007) 155 Cal.App.4th 1485, 1493.) We decide questions of law de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800.)

      1.     *Attorney Fees for Administration or Defense of the Trust*

"[T]he Probate Code is studded with provisions authorizing the trustee to hire and pay (or seek reimbursement for having paid) attorneys to assist in trust administration." (*Hollaway v. Edwards, supra,* 68 Cal.App.4th at p. 97.) Section 16247 empowers the trustee "to hire . . . attorneys . . . or other agents . . . to advise or assist the trustee in the performance of administrative duties." Section 16243 provides, "The trustee has the power to pay . . . reasonable compensation . . . of . . . agents of the trust . . . incurred in the . . . administration . . . and protection of the trust." Section 15684, subdivision (a) provides, "A trustee is entitled to the repayment out of the trust property for . . . [¶] [e]xpenditures that were properly incurred in the administration of the trust."

" 'The underlying principle which guides the court in allowing costs and attorneys' fees incidental to litigation out of a trust estate is that such litigation is a benefit and a service to the trust,' " and not for the personal benefit of the trustee. (*Whittlesey v. Aiello, supra,* 104 Cal.App.4th at p. 1230.) Courts have found a trustee's legal services were for the benefit of the trust, and thus payable from trust funds, where the attorneys helped prepare an accounting (*Kasperbauer, supra,* 171 Cal.App.4th at p. 235); successfully defended an accounting (*Estate of Beach* (1975) 15 Cal.3d 623, 629–630); litigated to preserve trust assets (*Dingwell v. Seymour* (1928) 91 Cal.App. 483, 513–515); successfully defended against a petition to invalidate the trust (*Estate of Miller*

9

(1968) 259 Cal.App.2d 536, 545); or successfully defended against a petition to remove or surcharge the trustee (*Copley v. Copley* (1981) 126 Cal.App.3d 248, 291, 295 [denial of trustees' attorney fees in resisting removal reversed following reversal of order removing trustees]).

Fee awards have been denied or reduced where the attorneys helped prepare an inaccurate accounting (*Estate of Keyston* (1951) 102 Cal.App.2d 223, 231–232); unsuccessfully defended an accounting (*Estate of Vokal* (1953) 121 Cal.App.2d 252, 258); or unsuccessfully defended a petition to remove or surcharge the trustee (*Estate of Miller, supra,* 259 Cal.App.2d at pp. 546–547). Where the results of such proceedings were mixed, courts have either awarded fees based on the trustee's overall success in the proceeding (*Estate of Cassity, supra,* 106 Cal.App.3d at p. 574) or apportioned fees according to the trustee's success (*Estate of Gump* (1992) 1 Cal.App.4th 582, 605–606, 609–611 [remanding for recalculation]).

Fee awards have also been found inappropriate where the trustee acts from personal interest or motive. (See *Conservatorship of Lefkowitz* (1996) 50 Cal.App.4th 1310, 1313–1316 [reasoning by analogy to trust cases, conservator not entitled to fees for resisting removal out of concern for personal reputation]; cf. *Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1134 [distinguishing attorney-client relationship with *office* of trustee and with trustee personally based on purpose of representation *and* source of payment of attorney fees; e.g., trustee may personally hold privilege when "hiring a separate lawyer and paying for the advice out of . . . personal funds"]; *Fiduciary Trust Internat. of California v. Klein* (2017) 9 Cal.App.5th 1184, 1196–1197 [same].)

In short, the costs of a *successful* defense to a removal or surcharge petition are generally chargeable against the trust even though the trustee personally benefits as a result. (*Hollaway v. Edwards, supra,* 68 Cal.App.4th at p. 99.) However, a trustee is not entitled to indemnity for fees incurred in an *unsuccessful* defense of such a petition absent an additional showing that "the trustee subjectively believed that the expense was necessary or appropriate to carry out the purpose of the trust and that belief was

10

objectively reasonable." (*Conservatorship of Lefkowitz, supra,* 50 Cal.App.4th at p. 1314.)

2.      *The Trust Indemnity Provisions*

A trustee's entitlement to use of trust assets to retain and compensate attorneys may be expanded by the terms of the trust instrument. (See, e.g., *Doolittle v. Exchange Bank* (2015) 241 Cal.App.4th 529, 533–534, 537 (*Doolittle*) [trust instrument authorized trustee to defend contest to trust amendment at trust's expense, even though trustees must ordinarily remain neutral in disputes among beneficiaries].) In this case, the Trust instrument includes express indemnity provisions more expansive than the Probate Code and case authority, limiting liability to "willful misconduct or gross negligence."[5] The Trust instrument here, as amended, provides: "Except for the Trustee's willful misconduct or gross negligence . . . , the Trustee shall be indemnified and held harmless . . . by the trust estate . . . from and against any and all liens, claims, liabilities and expenses, including reasonable attorneys' fees, for which the Trustee may be liable or subjected, arising out of, emanating from or made with respect to the trust or any assets or liabilities thereof . . . ."[6] Civil Code section 2778, subdivision 3, further provides that

---

[5] The People suggest the Trust indemnity provisions must be strictly construed as applying only to "trustees" and not *former* trustees. There is, however, no absolute bar to payment of *former* trustees' attorney fees from trust assets. Former trustees have been found to be entitled to attorney fees where the attorneys helped prepare and successfully defend a final accounting (*Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 267–268 (*Donahue*)) or successfully defended against a petition to surcharge the former trustee (*Estate of Cassity, supra,* 106 Cal.App.3d at p. 574). The People cite *Prince v. Pacific Gas & Electric Co.* (2009) 45 Cal.4th 1151, which holds, "Express indemnity generally is not subject to equitable considerations or a joint legal obligation to the injured party; rather, it is enforced in accordance with the terms of the contracting parties' agreement." (*Id.* at p. 1158.) This language must be understood in context: the court was contrasting equitable indemnity, which " 'is premised on a joint legal obligation to another for damages,' " to express contractual indemnity, which is governed instead by contractual language. (*Ibid.*) The *Prince* court did not purport to alter ordinary rules of contract interpretation.

[6] The full provision reads: "No trustee acting hereunder shall be liable to (1) any beneficiary of the trust or (2) any other person interested in the trust, for any action or

11

a contractual indemnity provision "embraces the costs of defense . . . incurred in good faith, and in the exercise of a reasonable discretion."

Significantly, Shine does not contend the indemnity provisions impose a duty to defend on the Trust regardless of the surcharge litigation's outcome. (See *Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 557–558 [in express contractual indemnity case, distinguishing between duty to reimburse defense costs of a successful litigant (Civ. Code, § 2778, subd. 3) and duty to defend regardless of case outcome (*id.*, § 2778, subd. 4)].) Instead, he seeks payment of defense costs only if he is ultimately found entitled to indemnity under these provisions, with any advanced fees subject to repayment if no entitlement to indemnity is ultimately found. As Shine stated in the trial court: "In the unlikely event that . . . the [Attorney General] were to prevail on its claims . . . , its remedy would be in an order for the Former Trustees to reimburse the Trust for their attorneys' fees and costs paid."

---

failure to act, except for willful misconduct or gross negligence; provided, however, the Trustee shall never have personal liability to anyone for making or failing to make discretionary distributions, notwithstanding the Trustee's willful misconduct or gross negligence. Except for the Trustee's willful misconduct or gross negligence unrelated to discretionary distributions, the Trustee shall be indemnified and held harmless jointly and severally by the trust estate and by the Trustor and the Trustor's estate from and against any and all liens, claims, liabilities and expenses, including reasonable attorneys' fees, for which the Trustee may be liable or subjected, arising out of, emanating from or made with respect to the trust or any assets or liabilities thereof or any beneficiary thereof or the creditor of any beneficiary thereof or any other person interested in the trust or distributions from same." Related provisions state: "No Trustee shall be liable for any mistake or error of judgment in the administration of the trust, except for such Trustee's gross negligence or willful misconduct"; and, "The trust shall indemnify and hold the Trustee harmless from any loss, cost or expense incurred as a result, directly or indirectly, of acting as the Trustee of the trust, unless such loss, cost or expense arises out of the Trustee's violation of this trust or arises out of an act or omission performed in an unreasonable manner or in bad faith."

Section 16461, subdivision (b) provides: "A provision in the trust instrument is not effective to relieve the trustee of liability (1) for breach of trust committed intentionally, with gross negligence, in bad faith, or with reckless indifference to the interest of the beneficiary, or (2) for any profit that the trustee derives from a breach of trust."

3.    *Pendente Lite Fees*

The essential focus here is not on the extent to which Shine would be entitled to indemnification if he is ultimately vindicated.  Rather, the focus is on his entitlement to *interim or pendente lite* fees (i.e., fees for ongoing litigation not yet resolved on the merits).[7]  This issue is not well-developed in the case law.[8]  In the large majority of cases addressing trustees' entitlement to attorney fees, fees have been awarded or denied *after* resolution of the underlying proceeding or litigation, not before.[9]  The primary authority relied upon by Shine and the trial court, *Kasperbauer*, authorized an award of "interim" or "pendente lite" fees for former trustees who were resisting objections to their final accounting and a petition for surcharges, subject to repayment if the trustees failed to prevail.  (*Kasperbauer, supra,* 171 Cal.App.4th at pp. 232, 238.)  The *Kasperbauer* court's rationale was that the Probate Code and relevant cases recognize current and former trustees' entitlement to reimbursement of trust administration expenses that were incurred for the benefit of the trust and "[n]othing in the Probate Code or case law requires that attorneys who aid a trustee in trust administration must await a final

_____

[7] "Interim" fees in the sense of a fee award for completed tasks related to the ongoing administration of a trust are clearly authorized under the Probate Code. (§§ 16243, 17200, subd. (b)(5).)

[8] Shine cites *Alan S., Jr. v. Superior Court* (2009) 172 Cal.App.4th 238 as support for the assertion that "it is well settled that courts of equity may grant interim or *pendente lite* relief including payment of attorneys' fees."  In that case, however, the award of interim fees was specifically authorized and governed by statute, Family Code section 2030.  (*Alan S.*, at p. 251.)

[9] In *Donahue*, the trial court ordered a former trustee's future attorney fees paid from trust property "subject to final approval by the court at the conclusion of the litigation and reimbursement by [the former trustee] of any disallowed amounts." (*Donahue, supra,* 182 Cal.App.4th at pp. 266–267.)  In that case, however, the allegations of wrongdoing against the former trustee had already been resolved in his favor (*id.* at pp. 263–264) and the ongoing dispute involved the reasonableness of the fees, not alleged misconduct of the former trustee (*id.* at pp. 263–264).  Moreover, the future fee award had likely become moot.  (*Id.* at p. 275.)  The case was remanded for trial court review of the reasonableness of the claimed ongoing fees.  (*Ibid.*)  Because the *Donahue* court did not cite any authority for an award of interim fees in a trust administration case, it does not help us resolve the issues presented in this appeal.

13

adjudication of the beneficiaries' claims against the trustee to receive compensation." (*Kasperbauer*, at p. 236; see *id.* at pp. 234–236.) That is, *Kasperbauer* relies in part on legislative and judicial silence to support its conclusion.

*Doolittle, supra,* 241 Cal.App.4th 529, also provides useful guidance in this area. In *Doolittle*, the trustee of a testamentary trust petitioned the court for instructions to use trust funds to defend against a beneficiary's action to invalidate two trust amendments on the grounds of undue influence and a trustor's lack of testamentary capacity.[10] (*Id.* at pp. 535–536.) The trial court granted the petition and the reviewing court affirmed, noting the challenged trust amendment expressly authorized the trustee to defend against any contest to the amendment.[11] (*Id.* at pp. 533–534, 536–537, 549.) However, the court added: "Upon a sufficient showing, the party contesting the validity of a trust instrument may seek a preliminary injunction, which is within the probate court's discretion to grant. [Citations.] Such an application would allow the court to weigh the equities and enjoin the use of trust assets to defend a challenge upon a proper showing of likelihood of success. (See *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999 ['In deciding whether to issue a preliminary injunction, a trial court weighs two interrelated factors: the likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction'].)" (*Doolittle*, at p. 546.) Applying this test, the *Doolittle* court held the interim fee award was not an abuse of discretion. The objecting beneficiary "made no attempt to establish that she is likely to prevail," the "trustee presented substantial evidence tending to negate the allegations of incapacity and undue influence, and there is no showing that the

---

[10] The essential controversy in *Doolittle* was a dispute among beneficiaries entitled to distributions under the original and amended trust documents. (*Doolittle, supra,* 241 Cal.App.4th at pp. 533, 535.) In such cases, the trustee may recover attorney fees only if the trustee remains neutral in the dispute among the beneficiaries. (*Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1462; *Mitau v. Roddan* (1906) 149 Cal. 1, 15–16.)

[11] Of course, the authorizing provision would itself be invalidated if the contest was successful. (*Doolittle, supra,* 241 Cal.App.4th at p. 544.)

beneficiaries under the [challenged] trust amendment have the resources to defend [the] actions if the trustee may not do so at trust expense." (*Ibid.*)

We agree with the conclusions in *Doolittle* and *Kasperbauer* that a probate court has the *discretion* to award interim fees in some circumstances. As impliedly observed by *Doolittle supra,* 241 Cal.App.4th at page 546, probate courts have broad discretion (§ 17206), their express powers under the Probate Code have been interpreted to include lesser remedies within the boundaries of those authorized by statute (see *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427–428 [express authority to remove trustee sua sponte necessarily includes inherent equitable power to employ less extreme remedy pending hearing (e.g., suspending trustee's powers, appointing interim trustee ad litem)]), and a probate court may exercise its discretion to authorize trustee actions in advance or review the propriety of trustee actions after completion (see *Estate of Denton* (1971) 17 Cal.App.3d 1070, 1074–1076).

We are not persuaded, however, by the suggestion in *Kasperbauer* that legislative and judicial silence provides absolute discretion to award interim fees as a matter of equity, particularly where the gist of the underlying action is that a trustee has violated his or her fiduciary obligations to the trust and trust beneficiaries. *Kasperbauer* fails to provide any *guidance* for a probate court's exercise of such discretion. In *Doolittle*, the challenged trust instrument expressly authorized the trustee's defense of a trust amendment contest, yet the court reasoned interim fees could be withheld on a factual showing that the challenge would likely succeed on the merits and a balancing of equities under those circumstances.

We think in an ordinary case, where the trust instrument is silent on interim fees, the *grant* of interim fees should be governed by the following: the court must first assess the probability that the trustee will ultimately be entitled to reimbursement of attorney fees and then balance the relative harms to all interests involved in the litigation, including the interests of the trust beneficiaries. An assessment of the balance of harms requires at least some inquiry into the ability of the trustee or former trustee to repay fees if ultimately determined not to be entitled to the costs of defense.

15

We believe the same standard would govern an award of interim fees under a trust's indemnity provisions that are silent as to interim fees, such as the Trust provisions at issue in this case. Where the assets a trustee seeks to access are part of a trust corpus, the equitable considerations in permitting contractual indemnity from those assets prior to determination of entitlement to indemnity apply with at least equal, if not greater, force. Notably, Shine cites *Bank of Idaho v. Pine Avenue Associates* (1982) 137 Cal.App.3d 5, 16–17, where the appellate court discussed *equitable* factors that were relevant to an interim fee award in a contractual context. Those factors included the relative burdens on the parties if the fees were advanced. (*Id.* at pp. 17–18.) Shine agrees an interim award in that case was considered as an "equitable remedy." We find this authority to be consistent with the standards we articulate here.[12]

### 4. *Application*

In our view, an award of pendente lite fees will seldom be justified where, as here, the trust is silent on interim fees and the trustee's misconduct is at issue. Here, the trial court made an express finding that *the People* had demonstrated a "strong case" in support of the removal and surcharge petition. Should the People prevail, Shine will *not* ultimately be entitled to recover his attorney fees. Even assuming the high standards of willful misconduct or gross negligence will apply, we conclude the People's petition alleges such behavior and the evidence submitted in opposition to Shine's fee application

---

[12] We note another troublesome issue, exemplified by the interim trustee's request for instructions but not addressed by the parties in their briefing. Normally attorneys retained for the benefit of the trust have an attorney-client relationship with the trust, and not the trustee personally. (See *Fiduciary Trust Internat. of California v. Klein, supra*, 9 Cal.App.5th at pp. 1196–1199.) It is the trustee's responsibility to ensure that any fees paid by the trust are "reasonable in amount and reasonably necessary to the conduct of the litigation." (*Donahue, supra,* 182 Cal.App.4th 259, 263; see § 15684.) The attorneys here represent only Shine—the interim trustee has no ability to assess the amount or necessity of any fee charged—essentially providing Shine a "blank check" to be drawn upon trust assets, subject only to post hoc review by the court. Shine's suggestion at oral argument that the trial court could review and approve each interim payment for necessity and reasonableness would seem to raise yet another set of difficult questions. In light of our decision, we need not reach this issue.

establishes at least a prima facie case supporting the allegations. Shine submitted no evidence to counter the allegations.

In its Fee Order, the trial court focused on the "inequity of forcing the former trustees to fund their own defense against the unlimited resources of the Attorney General's office." It did not expressly weigh the balance of relative harms to Shine, the People, and most significantly, the charitable beneficiaries of the Trust if Shine's defense fees are or are not advanced by the Trust. A mere imbalance in resources between parties is not, standing alone, a proper equitable consideration supporting an award of interim fees. "[I]t is the rare case where the state does not have greater resources than a private party in any sort of litigation." (*Clark v. Superior Court* (1998) 62 Cal.App.4th 576, 591.) Rather, the court must consider whether Shine will be unduly prejudiced by having to bear his own attorney fees until resolution of the petition allegations (i.e., his ability to mount an adequate defense) and whether the charitable beneficiaries would be unduly prejudiced if the fees were advanced and not repaid (i.e., Trust assets would be placed at risk).[13]

On the current record, we cannot conclude that the trial court applied the correct legal standards in deciding to approve the fee request. We therefore reverse and remand for reconsideration.

### III.   DISPOSITION

The Fee Order is reversed. On remand, the court shall reconsider the fee petition applying the legal standards set forth in this opinion. Shine shall bear the People's costs on appeal.

---

[13] The People argue it would also be inequitable for Shine to take advantage of the Trust's indemnity provisions because the Trust would have terminated long ago had Shine faithfully performed his duties as trustee. They cite the principle that "[n]o one can take advantage of his own wrong." (Civ. Code, § 3517.) The trial court may take this argument into consideration when exercising its equitable discretion on remand.

17

_____
BRUINIERS, J.

WE CONCUR:


_____
JONES, P. J.


_____
SIMONS, J.


A148505

18

Superior Court of Marin County, No. PRO 1305238, Mark A. Talamantes, Judge.

Kamala D. Harris and Xavier Becerra, Attorneys General, Tania M. Ibanez, Senior Assistant Attorney General, Elizabeth S. Kim, Susan J. Kawala, Alicia K. Berry and James Toma, Deputy Attorneys General, for Plaintiff and Appellant.

Epstein Law Firm, Robert F. Epstein, Robyn B. Christo; Bien & Summers, Elliot L. Bien; Law Office of Joseph Wolberg and Joseph G. Wolberg for Defendants and Respondents.