Filed 12/16/21  Sonntag v. Franz CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| DEBORAH SONNTAG, et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>GAYLYN DEMARTINI FRANZ,<br><br>    Defendant and Appellant. | A161466<br><br>(Marin County<br>Super. Ct. No. CIV1701027,<br>PRO1800579) |

Appellant Gaylyn DeMartini Franz appeals from the trial court's postjudgment order denying her motion for attorney fees.

As we have recounted in our nonpublished opinion in the appeal from the judgment (*Sonntag v. DeMartini* (Dec. 16, 2021, A160247) (*Sonntag I*), the underlying matter involved a dispute among four siblings over the distribution of trust proceeds.  The siblings are all beneficiaries of the Ronald DeMartini Exemption Trust (exemption trust), of which sibling Steven DeMartini is the designated successor trustee.[1]

Siblings Deborah Sonntag and Loriann DeMartini brought two actions, which were later consolidated, against Steven and Gaylyn.  One was a civil action against Gaylyn, individually and in her role as executor of their mother's will, alleging she had acted as a "de facto [c]o-[t]rustee" of the

_____

[1] We refer to the siblings by their first names to avoid confusion.

1

exemption trust, and in doing so, had breached her fiduciary duty to Deborah and Loriann by retaining the proceeds of a loan encumbering exemption trust property in her mother's estate. The second action, against both Gaylyn and Steven, was a probate petition to compel redress of alleged breaches of trust and to remove Steven as the trustee of the exemption trust.

Following a 15-day trial, the trial court concluded Gaylyn had acted as a de facto trustee of the exemption trust for about six months after her mother's death. However, the court found no breaches of fiduciary duty by either Gaylyn or Steven and, in any event, also found there were no damages resulting from the alleged breaches. We affirmed that judgment in the related appeal.

Following the entry of judgment, Gaylyn filed a motion for attorney fees incurred in defending the action against her, claiming entitlement to fees based on the finding she was the de facto trustee for six months. She also sought costs as the prevailing party. The court granted her motion as to statutory costs but denied it as to attorney fees. We affirm.

## BACKGROUND

We here quote from our opinion in the related appeal, *Sonntag I*, *supra,* A160247:[2]

The genesis of the exemption trust was the " 'Ronald P. DeMartini and Joyce E. DeMartini Family Trust' (family trust) created by the siblings' parents in 1993. That trust provided that after the death of the first parent, the trust would be divided into two separate trusts, 'designated the survivor's trust and the exemption trust.' The surviving parent had the power to

---

[2] We take judicial notice of our opinion in that case, *Sonntag I*, *supra*, A160247. (Evid. Code, § 451, subd. (a).)

2

'amend, revoke, or terminate the survivor's trust; but the exemption trust [could] not be amended, revoked, or terminated.'

"The family trust provided that when the surviving parent died, 'the Trustees shall add to the exemption trust any portion of the survivor's trust not disposed of and shall then distribute to the children . . . in equal shares, all assets of the exemption trust, together with any and all undistributed income.'

"Ronald DeMartini died in 1994, and the family trust was duly split in two—the exemption trust being irrevocable, with each of the four siblings holding equal interests in the remainder.

"Joyce DeMartini became the successor trustee of both the survivor's trust and the exemption trust.

"As the trustee of the survivor's trust, Joyce was authorized to pay herself, as the surviving spouse, the income from the trust, and could also pay any 'sums from the principal . . . in the Trustees' discretion, consider[ed] necessary for the surviving spouse's proper health, support, comfort, enjoyment, and welfare.' The trust also provided the trustee 'shall pay the surviving spouse as much of the principal . . . as he or she shall request in writing.'

"As the trustee of the exemption trust, Joyce was authorized to pay herself, as the surviving spouse, the income from the exemption trust 'in all sums and in any proportion that may be necessary, in the Trustees' discretion, for . . . her health, education, support, and maintenance. . . .' If the trustee considered the income insufficient, she had discretion to pay 'all sums from the principal as [she] . . . consider[ed] necessary for the beneficiary's proper health, education, support and maintenance. . . .' Although '[p]ayments from principal to the surviving spouse shall be made

3

first from the survivor's trust until it is exhausted and thereafter from the exemption trust, . . . all or any part of those payments may be made from the exemption trust without exhausting the survivor's trust if the Trustees consider it advisable.'

"The trust instrument provided that on the surviving spouse's death, 'if and to the extent that the surviving spouse shall not have effectively disposed of all property of the trust estate of the survivor's trust through a valid and effective exercise of a power of appointment, all of the remaining trust assets of the trust shall be distributed to the then-acting trustees of the exemption trust to be added to and form part of the assets of the exemption trust. . . .'

"In 2012, Joyce executed a revised will and an amendment to the survivor's trust, by which she excluded Deborah and Loriann as beneficiaries of her estate and that trust. Joyce named Gaylyn and Steven as the beneficiaries of both.

"In 2013, Joyce amended the survivor's trust to appoint Gaylyn as co-trustee. Joyce also executed an agency agreement authorizing Gaylyn to act on Joyce's behalf with respect to the exemption trust.

"By the end of 2013, Joyce's financial condition had become reduced. She had moved into a retirement home, increasing her monthly expenses. She was also involved in litigation with her sister-in-law, Patricia Ryerson (Ryerson), regarding a Forestville rental property they owned together, and was receiving less income as a result.

"In 2014, Joyce took out a $258,000 mortgage on a Novato property, which was part of the exemption trust. The net proceeds of the cash-out refinance amounted to $220,286.82. Joyce used some of those funds to pay her expenses and loaned or gave $9,000 to her granddaughter Jessica Rankin (Loriann's daughter).

4

"The proceeds of the Novato loan were deposited into a checking account held by the survivor's trust, of which Joyce and Gaylyn were the trustees. Joyce then transferred $200,000 from that account into a separate account in her name, alone.

"Joyce died in 2015. . . . [¶] At the time of Joyce's death, there was about $189,000 remaining of the Novato loan proceeds, held in her separate account.

"Gaylyn became the successor trustee of the survivor's trust, of which she was a beneficiary. She was also the executor and a beneficiary of Joyce's will.

"Although Steven was the successor trustee of the exemption trust, Gaylyn also managed that trust for the first six months following Joyce's death. According to Steven, Gaylyn managed the exemption trust with his 'expressed consent' because she had more experience handling 'matters like these.'

"[¶] . . . [¶]

"Deborah and Loriann then filed a civil action against Gaylyn, individually and as executor of Joyce's estate, for breach of trust, conspiracy to breach trust, and intentional interference with economic advantage, and sought imposition of a constructive trust. The complaint also alleged Joyce had breached her fiduciary duties by encumbering the Novato property, and conspired with Gaylyn to do so. They additionally filed a probate petition 'for redress of breach of trust and for removal of trustee' against both Gaylyn and Steven. (Capitalization omitted.) They alleged Gaylyn, as de facto trustee of the exemption trust, and Steven, as successor trustee, had breached their fiduciary duties in relation to the Novato loan. They also alleged Steven's distribution of trust assets was unequal.

5

"After settlement negotiations broke down, Steven filed a Probate Code section 850[3] petition seeking to have the remaining Novato loan proceeds transferred to the exemption trust. Gaylyn filed a consent to the transfer and agreed to transfer the $189,758.96 remaining balance in Joyce's personal bank account to the exemption trust. Gaylyn explained, however, that her consent was an effort to resolve the litigation with her sisters, not a concession that the Novato loan proceeds had been wrongfully transferred from the exemption trust. She stated in her reply memo 'the 850 Petition simply represents Steven and Gaylyn's attempt to anticipate the most that Deborah and Loriann could possibly derive from a recovery in this litigation and have sought (in Steven's case) and consented to (in Gaylyn's case) an order that should moot the majority of Deborah and Loriann's damages claims. Although Deborah and Loriann's claims are unfounded, it is for these reasons that Steven filed, and Gaylyn consented to, the 850 Petition.'

"The court granted the petition (the section 850 order) in an order providing, the exemption trust 'is entitled to title and ownership of the Bank of Marin account . . . held in the name of Gaylyn . . . Executor of the Estate of Joyce. . . . [¶] Gaylyn . . . is ordered to transfer title of ownership of the Bank of Marin . . . account . . . which holds $189,758.96 . . . to Steven . . . as Trustee of the Exemption Trust.' The order further provided, 'This Order is made without prejudice to the rights of any party to pursue additional remedies, damages and defenses in the litigation. . . .'

"The return of the Novato funds, however, did not end the litigation. The civil and probate cases were consolidated and proceeded to trial.

---

3 All further undesignated statutory references are to the Probate Code.

6

"Following a 15-day trial, the court issued a 26-page statement of decision. The court found Gaylyn was the de facto trustee of the exemption trust from the date of Joyce's death until April 20, 2016 (when Steven sent a letter to his siblings stating he was ' "taking a more active role as the Trustee of the Exemption Trust" ') and Gaylyn therefore had a fiduciary duty to the beneficiaries during that time. However, the court also found neither Joyce, Gaylyn, nor Steven, breached their fiduciary duties to the trust beneficiaries in relation to the Novato property loan proceeds.

"The court further found that the loan proceeds had been placed in Joyce's separate bank account and were therefore part of her estate. However, since Gaylyn had transferred the remaining funds to the exemption trust pursuant to the section 850 order ('because she was hoping that if she returned the money . . . this litigation would end'), the court ruled the beneficiaries had, in any event, suffered no damages from any asserted breach of the trustees' fiduciary duties." (*Sonntag I*, *supra*, A160247.)

After trial, Gaylyn filed a motion for $482,678.60 in attorney fees and $36,513.18 in costs/fees. She claimed she was entitled to attorney fees since the court found she was a de facto trustee and the trust provided the trustee may defend legal actions relating to the trust at the expense of the trust.[4] Gaylyn also maintained the court should exercise its equitable powers to award attorney fees because Deborah and Loriann had acted in bad faith.

The court denied her motion for attorney fees but granted it as to costs. The court stated: "Ultimately, the Court determined that for a brief period of time, Gaylyn (by continuing to manage Trust property after her mother died)

---

[4] Gaylyn sought consolidation of this appeal with the appeal from the judgment in the underlying action. We previously declined to consolidate the appeals.

acted as a de facto trustee of the Trust and as such was required to protect the interests of the beneficiaries. Her role as de facto trustee however, was contrary to the specific terms of the Trust. The terms of the Trust stated that upon the surviving spouse's death, Steven (and not Gaylyn) was to be the trustee (See Section 12.2 of the Exemption Trust) and as such, he was authorized to defend his actions at Trust expense. (See Sections 10.2 and 10.3(d) of the Exemption Trust.) That authorization did not include the payment of attorney's fees for any person not designated trustee who, on their own, assumed this role. Accordingly, the request pursuant to this claim/theory is denied." (Boldface, underscoring & italics omitted.)

The court likewise rejected Gaylyn's claim it should exercise its equitable powers and award attorney fees due to her siblings alleged bad faith in pursuing the lawsuits. The court ruled, "Although Petitioner's litigation was prolonged and potentially 'ill-conceived,' this Court does not believe Petitioners were acting in bad faith."

## DISCUSSION

Gaylyn continues to maintain she is entitled to attorney fees under the terms of the trust instrument because the court found she was the de facto trustee for six months and breached no fiduciary duties.[5]

Gaylyn first claims the trial court "failed to apply the correct legal standard as it pertains to a trustee's reimbursement of attorneys' fees. . . ." She maintains this standard is set forth in *Copley v. Copley* (1981) 126 Cal.App.3d 248, 295, which provides that where the trust instrument provides the "trust is required to bear the cost of legal expenses incurred for contesting claims against the trust estate by means of litigation [and] . . .

---

[5] She does not pursue her claim for fees based on her sibling's alleged bad faith.

[t]he litigation undertaken by the trustees . . . was not in bad faith or without probable cause . . . the trial court's denial of the litigation expenses cannot stand."

There is no dispute that a trustee may hire and seek reimbursement for attorneys hired to assist in administration of the trust. " '[T]he Probate Code is studded with provisions authorizing the trustee to hire and pay (or seek reimbursement for having paid) attorneys to assist in trust administration.' [Citation.] Section 16247 empowers the trustee 'to hire . . . attorneys . . . or other agents . . . to advise or assist the trustee in the performance of administrative duties.' Section 16243 provides, 'The trustee has the power to pay . . . reasonable compensation . . . of . . . agents of the trust . . . incurred in the . . . administration . . . and protection of the trust.' Section 15684, subdivision (a) provides, 'A trustee is entitled to the repayment out of the trust property for . . . [¶] . . . [e]xpenditures that were properly incurred in the administration of the trust.' [¶] ' "The underlying principle which guides the court in allowing costs and attorneys' fees incidental to litigation out of a trust estate is that such litigation is a benefit and a service to the trust," ' and not for the personal benefit of the trustee." (*People ex rel. Harris v. Shine* (2017) 16 Cal.App.5th 524, 534.)

Indeed, the trust instrument provided the "Trustees are authorized and empowered in the Trustees' discretion as follows: [¶] [10.3](d) To commence or defend, at the expense of the trusts, legal actions relating to the trusts or any trust property as the Trustees deem advisable. [¶] . . . [¶] 10.4 Employment of Agents. The Trustees are authorized and empowered to employ attorneys, investment counsel, accountants, bookkeepers or other persons to render services for the Trustees or in the Trustees' behalf with respect to all matters pertaining to any trust provided for in this instrument

9

and to pay from the trust estate the reasonable fees and compensation of such persons for their services. . . ."[6]

The issue, however, is not whether a named trustee can recover fees, but whether an individual found to have voluntarily assumed the role of a de facto trustee for a limited amount of time, is entitled to fees.[7]

In claiming such entitlement, Gaylyn relies on *King v. Johnston* (2009) 178 Cal.App.4th 1488 (*King*) wherein the court explained, " ' "It is a well settled rule in the law of trusts that if a person not being in fact a trustee acts as such by mistake or intentionally, he thereby becomes a trustee *de son tort*. The rule is thus laid down by a recent writer: 'A person may become a trustee by construction, by intermeddling with and assuming the management of property without authority. Such persons are trustees *de son tort* [just] as persons who assume to deal with a deceased person's estate without authority are administrators *de son tort*. . . [.] *During the possession and management by such constructive trustees they are subject to the same rules and remedies as other trustees*.' [Citations.] . . . It is plain that this branch of the law does not rest on the strict ground of estoppel as usually expounded in the law books. It rather depends upon a principle of public policy connected with the right administration of justice. [Citation.] The principle to be extracted from the cases is that the party acting as trustee shall not be allowed, in a court of justice, to set up, as against parties interested in the administration of the trust, a state of things inconsistent

---

[6] Pursuant to this provision, the trial court granted Steven's attorney fees of $258,924.65 payable from the remaining trust cash assets ($215,575.79) and reimbursement in equal shares from his three siblings.

[7] "For a person to be deemed a de facto trustee, he or she must assume the office or position under color of right or title, and exercise the duties of the office." (90 C.J.S. (2021) Trusts § 327.)

10

with his assumed character." ' " (*King*, at p. 1506, citing *England v. Winslow* (1925) 196 Cal. 260, 267–268, italics added.)

Gaylyn focuses on the italicized language quoted above from *King*. *King* involved similar allegations by one trust beneficiary that another trust beneficiary was acting as a trustee *de son tort* and had breached her fiduciary duties in that regard. (*King*, *supra*, 178 Cal.App.4th at p. 1491.) The plaintiff in *King* alleged, specifically, that the other beneficiary had unduly influenced and conspired with the original trustee to transfer a piece of property out of the trust. (*Ibid*.) The plaintiff also alleged the other beneficiary had acted as the trustee, both before and after the death of the original trustee and had wrongfully deposited trust rental income into her personal account. The trial court concluded the plaintiff did not have standing to sue the other beneficiary for her "role as a third party participant in a trustee's breach." (*Id.,* at pp. 1491–1492.)

The Court of Appeal reversed, concluding the plaintiff did have standing. It remanded the case for the trial court to consider whether the plaintiff could recover under the theory the other beneficiary was acting as a trustee *de son tort* and had breached her fiduciary duties. (*King*, *supra*, 178 Cal.App.4th at p. 1492.) Although the plaintiff asserted the other beneficiary should be responsible for attorney fees and costs, the court declined to address that issue because the trial court "made no findings with regard to damages because the court determined [plaintiff] did not have standing to sue [the other beneficiary], and because the court made no determination as to whether [the other beneficiary] might be liable as a trustee *de son tort*. . . ." (*Id*. at pp. 1507–1508.) In short, the issue of whether a de facto trustee is entitled to attorney fees was neither raised nor addressed.

11

Moreover, the language on which Gaylyn relies does not suggest a de facto trustee is entitled to attorney fees. Indeed, the quote indicates de facto trustees are " ' " '*subject to* the same rules and remedies as other trustees,' " ' " not that they are entitled to the rights of a de jure trustee. (*King, supra*, 178 Cal.App.4th at p. 1506, italics added.) As *King* explains, " ' "[t]he principle to be extracted from the cases is that the party acting as trustee shall not be allowed, in a court of justice, to set up, as against parties interested in the administration of the trust, a state of things inconsistent with his assumed character." ' " (*Ibid.*) Gaylyn cites no case in which a temporary de facto trustee was awarded attorney fees for defending an action.[8]

Gaylyn further maintains that since trustees are "generally entitled to reimbursement" for successful defense costs, "[p]ublic policy supports the mutuality of remedies as it pertains to a de facto trustee." However, she cites no authority for this proposition, suggesting only that "[t]his Court has the opportunity—if it were to grant Gaylyn's appeal—to discourage [unscrupulous, disgruntled beneficiaries] from pursuing 'ill-conceived' and 'prolonged' litigation."

---

[8] Our own research disclosed one Indiana case in which the court awarded attorney fees as a charge against the trust to the de facto trustees. (*Gray v. Union Trust Co.* (1938) 213 Ind. 675, 678; 14 N.E.2d 532.) The facts, however, are very different. In that case, the trustees were considered de facto because, although they were appointed as trustees by the United States District Court and acted and were recognized as such by the parties for seven years, the Seventh Circuit Court of Appeals later concluded the District Court had no jurisdiction to appoint trustees or administer the trust estate. (*Gray v. Union Trust Co. of Indianapolis* (1938) 12 N.E.2d 931, 935–937.) At the very least, in that case equitable considerations would have dictated that the de facto trustees have been reimbursed for expenses incurred in reliance on orders of the court and with the consent of the beneficiaries.

We decline to do so.  "[A]side from constitutional policy, the Legislature, and not the courts, is vested with the responsibility to declare the public policy of the state." (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 71.)  We also observe, as a practical matter, that Gaylyn, knowing she was not the trustee, certainly was under no obligation to incur expenses on behalf of the trust and she could have, and certainly should have, looked to the designated trustee, Steven, to shoulder his responsibilities as trustee to defend the trust against, as the trial court charitably described them, his siblings "ill-conceived" claims.

## DISPOSITION

The postjudgment order is affirmed.  Each side to bear their own costs on appeal.

BANKE, J.

WE CONCUR:

HUMES, P. J.

MARGULIES, J.

A161466
*Sonntag v. De Martini*