Filed 8/24/22 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SHAO YAN CHEN et al.,<br>        Plaintiffs and<br>        Respondents,<br>v.<br>VALSTOCK VENTURES, LLC,<br>et al.<br>        Defendants and<br>        Appellants. | A161885<br><br>(San Francisco City &<br>County Super. Ct. No. CGC-<br>18-566208)<br><br>ORDER MODIFYING<br>OPINION; NO CHANGE IN<br>JUDGMENT |

THE COURT:

Appellants' Request for Modification is granted in part and
denied in part. It is ordered that the opinion filed herein on July
29, 2022, be modified as follows:

1.    In footnote 14 on page 28, the sentence, "Valstock
      appears to imply that this means the trial court
      here could not award attorney's fees for the
      declaratory judgment cause of action until after
      the conclusion of all appeals from a final
      judgment" is deleted and replaced with, "Although
      it clarified and disclaimed this position during oral
      argument, Valstock's citation to *580 Folsom* in its
      briefing appeared to imply that this means the
      trial court here could not award attorney's fees for
      the declaratory judgment cause of action until

after the conclusion of all appeals from a final judgment."

There is no change in judgment.

Date: _____     _____ P. J.

Filed 7/29/22 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SHAO YAN CHEN et al., | |
| Plaintiffs and Respondents, | A161885 |
| v. | |
| VALSTOCK VENTURES, LLC, et al. | (San Francisco City & County Super. Ct. No. CGC-18-566208) |
| Defendants and Appellants. | |

The trial court awarded a group of plaintiffs approximately $1.1 million in attorney's fees under Civil Code section 1717 after granting their motion for summary adjudication of the sole cause of action on the contract in this case, before trial or disposition of the remaining non-contract causes of action.[1] The defendants appeal, arguing the award of attorney's fees was premature because the litigation as a whole had not yet ended. We agree and will therefore reverse.

## BACKGROUND

Because the issue in this appeal is purely procedural, we need not describe in detail the factual background. In brief, Shao Yan Chen, Han Lin Liu, Zhi Hua Mo, Yuk Yee Cheng, Hui Zhen

---

[1] Undesignated statutory references are to the Civil Code.

1

Hu, Ruizhao Wu, and Qi Di Wu (collectively, tenants) had a dispute with Valstock Ventures, LLC and 371 Broadway Street, LLC (together, Valstock) over which of two documents was the operative lease governing the tenants' tenancies in two of Valstock's apartment buildings. The tenants filed suit against Valstock seeking a declaratory judgment on this question, alleging a civil conspiracy, and stating claims for violations of the Fair Employment and Housing Act (Gov. Code, §§ 12900–12996) (FEHA), Unfair Competition Law (Bus. & Prof. Code, § 17203) (UCL), and section 37.10B of the San Francisco Rent Ordinance.[2]

After approximately a year of litigation, Valstock filed a motion for summary judgment and the tenants filed a motion for summary adjudication of their declaratory judgment cause of action and Valstock's related affirmative defenses. In September 2020, the trial court denied Valstock's motion and granted the tenants' motion. The tenants' allegation of civil conspiracy and their other causes of action remained pending.

The tenants then moved under section 1717 for an award of roughly $2.1 million in attorney's fees, arguing that the trial court's summary adjudication ruling meant they were the prevailing parties on the sole cause of action on the contract. Valstock responded by filing an ex parte application asking the court to continue the filing deadlines and hearing date on the fees motion until after a settlement conference and certain pre-trial

_____

[2] Several other plaintiffs joined the tenants in this complaint and named several additional defendants. We disregard these other parties because they were not part of the litigation on the attorney's fees award at issue in this appeal.

2

deadlines had passed. The record does not contain a transcript of the ex parte hearing or reflect any orders issued after the hearing. Other documents in the record indicate, however, that the trial court suggested at the hearing that plaintiffs voluntarily continue the hearing date on their fees motion until after trial or entry of judgment. The trial court also ordered the parties to meet and confer regarding Valstock's request for a continuance.

The parties were unable to come to an agreement, and the next day Valstock filed a second ex parte application, this time to continue the hearing date until after entry of a final judgment in the action. The second ex parte application argued the trial court should continue the hearing date until after entry of final judgment under the court's authority to manage its proceedings, in order to promote judicial economy. Valstock also asserted that a fee award was premature because the court had not entered final judgment and the remaining causes of action were in trial. Again, there is no direct record of the court's actions at the ex parte hearing, but we infer that the trial court denied Valstock's application, since briefing proceeded on the attorney's fees motion.

The trial court ultimately awarded the tenants approximately $1.1 million in fees.[3] A few weeks later, the

---

[3] Although the trial court granted the tenants' motion for fees, it restated its earlier comment, presumably from one of the ex parte hearings, that it was "a little anomalous that an attorneys' fees motion as to one cause of action has been filed while the case is nominally in trial and before the conclusion of the case."

tenants moved to enforce the fee award. Valstock then appealed the fee award. The trial court denied the tenants' motion to enforce the fee award, concluding that Valstock's appeal automatically stayed enforcement of the fee order. Valstock later filed an amended notice of appeal.

## DISCUSSION

### I. Forfeiture

The tenants argue that we should not entertain Valstock's challenge to the timing of the fee award because Valstock failed to raise it below. " ' "As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried. This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal." ' " (*Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548.)

Valstock's ex parte application to continue the hearing on the tenants' fee motion until after final judgment raised two arguments, albeit cursorily. First, Valstock asserted it was "premature" to hear the fees motion because the trial court had not yet entered final judgment and the remaining causes of action were in trial. Second, it argued the trial court had authority to continue the hearing to promote judicial economy. The first argument is essentially the same as Valstock's argument on appeal. Valstock did not cite any of the same authority that it presents here—indeed, it cited no authority at all to support its prematurity argument—but that is not

4

significant. "We are aware of no prohibition against citation of new *authority* in support of an *issue* that was in fact raised below." (*Giraldo v. Department of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 251.) Valstock might have saved itself considerable time, effort, and expense had it spent more time developing its prematurity argument in the trial court, but it raised the issue sufficiently to preserve it for appeal.

Even if Valstock had not raised the issue below, we would still reject the tenants' forfeiture argument. As the tenants acknowledge, appellate courts "have discretion to consider a new theory on appeal when it is purely a matter of applying the law to undisputed facts." (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316.) That is the situation here, where the only relevant facts are undisputed: the trial court entered summary adjudication of the single cause of action in the case that is "on the contract" and then awarded attorney's fees under section 1717 to the tenants as the parties who prevailed on the contract. The tenants argue we should not exercise our discretion to address the issue, but the only justification they offer is that they believe Valstock's arguments are meritless and an invitation to error. Whatever the merits of this rationale for applying the forfeiture doctrine, it has no bearing here because, as we explain, *post*, we agree with Valstock on the merits of this case.

## II. Mootness

The tenants suggest that because Valstock's appeal of the fee award is based entirely on prematurity and the absence of a final disposition of the litigation, Valstock's argument will be

moot if the trial court enters a final judgment while this appeal is pending. This argument is hypothetical, because there is not a final judgment. Valstock's request for judicial notice contains the most recent evidence on the state of proceedings in the trial court, and it indicates only that as of September 2021, trial of the tenants' remaining causes of action was set to begin in January 2022 and conclude in February 2022.[4] During the July 12, 2022, oral argument, the parties indicated that they have an August 2022 trial date. There is thus no final judgment in this matter.[5]

We will therefore proceed to the merits of the parties' dispute.

---

[4] Valstock has requested judicial notice of four former versions of section 1717 and four minute orders the trial court entered regarding trial on the other causes of action in the tenants' complaint. We deny the request for notice of former versions of section 1717. We will consider the evolution of section 1717 without the need for judicial notice; citation to such materials is sufficient. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45, fn, 9.) We grant the request for notice of the trial court's minute orders solely for the purpose of evaluating the potential mootness of this case. (*In re M.F.* (2022) 74 Cal.App.5th 86, 111.)

[5] In any event, even if the trial court had entered final judgment, we would not be persuaded to declare this appeal moot. "An appellate court retains discretion to decide a moot issue if the case presents an issue of ' "substantial and continuing public interest" ' and is capable of repetition yet evades review." (*Citizens Oversight, Inc. v. Vu* (2019) 35 Cal.App.5th 612, 615.) This appears to be a case of first impression, and the correct procedure for obtaining a fee award after a summary adjudication order is a matter of continuing public interest. If entry of a final judgment can moot an appeal from a fee award following a pre-trial ruling, this issue is also likely to recur and evade appellate review in future cases.

6

## III. Interim fee awards

### A. Standard of review

Valstock contends that section 1717 did not allow the trial court to make an interim award of attorney's fees based on the summary adjudication order.  This is a legal question that turns on the interpretation of a statute, so we interpret it de novo. (*Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 523 (*Frog Creek*) [" ' "On appeal this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law" ' "].)[6]

"In interpreting a statute, our primary goal is to determine and give effect to the underlying purpose of the law.  [Citation.] 'Our first step is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.'  [Citation.]  ' "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the

---

[6] The tenants urge us to apply an abuse of discretion standard of review to the trial court's determination that they prevailed on the contract under section 1717.  (*DisputeSuite.com, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 974, 979 (*DisputeSuite*).)  Because the issue here is a simple question of statutory interpretation, not whether the tenants met their litigation objectives, the abuse of discretion standard does not apply.  However, the standard of review in this case is immaterial; even if we were to apply the abuse of discretion standard, we would reach the same result given our interpretation of the statute.  (*Pina v. County of Los Angeles* (2019) 38 Cal.App.5th 531, 545 [" ' "Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion" ' "].)

face of the statute or from its legislative history." ' [Citation.] In other words, we are not free to 'give words an effect different from the plain and direct import of the terms used.' [Citation.] However, ' "the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute." ' [Citation.] To determine the most reasonable interpretation of a statute, we look to its legislative history and background." (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.)

### B. Analysis

#### 1. Finality of summary adjudication ruling

The parties' disagreement over whether the trial court was authorized to make an attorney's fees award is in part a dispute about the effect of the summary adjudication order on which the trial court based the fee award. Without argument or authority, Valstock asserts that the fee award was an interim fee award because the FEHA, UCL, and San Francisco Rent Ordinance causes of action and conspiracy allegation remained pending and the trial court had not entered final judgment when it made the award, implying that the summary adjudication order was not final. It later notes that the summary adjudication order was not appealable. The tenants, meanwhile, treat the summary adjudication order as if it were itself a final judgment, describing the trial court as entering declaratory judgment and repeatedly asserting that a declaratory judgment has the force of a final judgment.

8

We agree with Valstock.  It is established law that "[a]n order granting partial summary judgment—or summary adjudication—is not an appealable order."  (*Tucker Ellis LLP v. Superior Court* (*Nelson*) (2017) 12 Cal.App.5th 1233, 1240.)  Because the summary adjudication order was not appealable, it was an interim ruling, not a final resolution.  (*Robbins v. Los Angeles Unified School Dist.* (1992) 3 Cal.App.4th 313, 317 ["Normally, the rule for distinguishing between an interim and a final order is whether such order is appealable"].)  The tenants try to obfuscate this point by citing Code of Civil Procedure section 1060's statement that a declaratory judgment "shall have the force of a final judgment," which has been in the statute since the Legislature first enacted it in 1921.  (See Stats. 1921, ch. 463, § 1, p. 690.)  They also note that trial court can only grant summary adjudication if it "completely disposes" of a cause of action.  (Code Civ. Proc., § 437c, subd. (f)(1).)  But they stop short of contending that the summary adjudication order was itself appealable or a final judgment, and it was neither.  The statements in Code of Civil Procedure section 1060 giving a declaratory judgment the force of a final judgment and in section 437c allowing summary adjudication of only a complete cause of action do not change the non-final status of the summary adjudication order.  The tenants cite nothing to suggest either provision suspends operation of the "one final judgment" rule, which "prohibits review of intermediate rulings by appeal until final resolution of the case."  (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697.)  It would be rather peculiar if

9

Code of Civil Procedure section 1060 made the summary adjudication order immediately final, since that would mean summary adjudication of a request for a declaration of the parties' rights under a contract would be immediately final, where another type of summary adjudication of contractual rights, such as an award to one party for breach of the same contract, would not.

The summary adjudication order was also not final because a " 'trial court retains the inherent authority to change its decision at any time prior to the entry of judgment.' " (*Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1100 (*Goel*), quoting *Darling, Hall & Rae v. Kritt* (1999) 75 Cal.App.4th 1148, 1156; see also *Goel*, at p. 1107 [agreeing with *Darling, Hall*]; see also *Pinela v. Neiman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 237 [rejecting contention that trial court had no authority to vacate prior order compelling arbitration, explaining, "Even without a change of law, a trial court may exercise its inherent jurisdiction to reconsider an interim ruling"].) This authority exists to allow trial courts to correct their own errors. (*Goel*, at p. 1107.) Similarly, Code of Civil Procedure section 1008 allows a court to reconsider and change an order "at any time" if there has been a change in law. (Code Civ. Proc., § 1008, subd. (c).) This provision has been used to vacate an order granting summary adjudication seven years after it was originally entered. (*International Ins. Co. v. Superior Court* (1998) 62 Cal.App.4th 784, 786.) Because a summary adjudication order on a cause of action for declaratory judgment is subject to reconsideration,

10

either statutorily or based on the court's inherent authority, it cannot qualify as a final order.

Code of Civil Procedure section 437c, subdivision (n)(1) states, "If a motion for summary adjudication is granted, at the trial of the action, the cause or causes of action within the action, affirmative defense or defenses, claim for damages, or issue or issues of duty as to the motion that has been granted shall be deemed to be established and the action shall proceed as to the cause or causes of action, affirmative defense or defenses, claim for damages, or issue or issues of duty remaining." This provision does not make the summary adjudication order here a final resolution because trial in this matter had not started when the tenants requested attorney's fees. Moreover, Code of Civil Procedure section 437c, subdivision (n)(1) does not contain an exception to a court's statutory and inherent authority to modify a summary adjudication order. Any facts summarily adjudicated are deemed established unless and until the court modifies its order.

The parties' briefing originally did not address the impact of *Goel, supra,* 35 Cal.4th 1094, so we requested supplemental briefing on the application of that case and any related authority. In response, the tenants argue that the summary adjudication order is final under *Goel* because, they assert, the trial court has never reconsidered the order. But whether or not the trial court has reconsidered its summary adjudication order (which is not a matter in the record in this appeal), it retains authority to do so, which is sufficient to prevent the order from being final.

11

The tenants also argue that a trial court's authority to reconsider an order cannot mean it is not final because rulings are subject to later reversal, correction, or modification until all final appeals are exhausted. The only authority the tenants cite for this statement is Code of Civil Procedure section 1049, which states, "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." This statute does not give trial courts inherent authority to modify their rulings after a final judgment or other final disposition of a case, and in any event, we are not dealing with a scenario in which jurisdiction has passed from the trial court to the appellate court. Since the question here is whether a summary adjudication ruling is final as to the trial court, the prospect of modification of an order on appeal is not relevant.[7]

---

[7] Pointing to what they suggest is the overbreadth of Valstock's position here, the tenants argue that deeming the summary adjudication order non-final under *Goel* would mean a summary judgment order would also be non-final and not permit an award of fees under section 1717 under our reasoning. But that proves too much. The tenants are correct that a summary judgment order is non-final, but this does not bar an award of fees under section 1717. A fees motion may not follow a summary judgment order alone, but it can follow the entry of judgment based on a summary judgment order. (Cf. *Saben, Earlix & Associates v. Fillet* (2005) 134 Cal.App.4th 1024, 1030 ["a summary judgment is appealable, but an order granting summary judgment is not"]; *Phillips v. Phillips* (1953) 41 Cal.2d 869, 874 [issuance of memorandum containing findings of fact and conclusions of law after trial was not the entry of judgment; "at any time before entry of judgment" a trial court may amend or

## 2. Fee awards after interim resolution of contract claims

### a. *Statutory text*

Our conclusion that the summary adjudication order was not a final resolution of the contract cause of action in the tenants' complaint does not resolve the issue before us, because the question remains whether section 1717 permits fee awards based on interim resolutions of contract claims like the summary adjudication order in the tenants' favor. We conclude it does not.

The text of section 1717 does not explicitly address the question of when a trial court may make a fee award. However, the statutory language generally supports Valstock's contention that fees should be awarded only at the complete end of litigation, including on non-contract claims. Section 1717 contains several different provisions that are relevant here, and we will consider them in turn.

Section 1717, subdivision (a) states, in pertinent part, "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees *in addition to other costs*." (Italics added.) The same subdivision later declares, "Reasonable attorney's fees shall

___

change its findings of fact and conclusions of law and "enter a judgment different from that first announced"].)

13

be fixed by the court, and shall be an *element of the costs of suit*." (Italics added.)

The inclusion of section 1717 fees as an element of costs is significant because costs are awarded at the end of an action. Section 1032 of the Code of Civil Procedure defines the prevailing party entitled to costs in terms of the total outcome of the litigation. (Code Civ. Proc., § 1032, subd. (a)(4) [prevailing party "includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant"].) While section 1717 contains its own definition of a prevailing party, which we discuss *post*, the association between section 1717 attorney's fees and costs is a preliminary indication that the Legislature envisioned attorney's fees being awarded only at the end of an entire action.

Section 1717, subdivision (b)(1) provides in part, "The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who *recovered* a greater relief in the *action* on the contract." (Italics added.) The use of the past tense in the definition of a prevailing party for the purposes of section 1717 as the party who "recovered" indicates that the determination would be made after a final resolution of the litigation, not merely an interim resolution of only some of the causes of action in the case.

14

(Cf. *P R Burke Corp. v. Victor Valley Wastewater Reclamation Authority* (2002) 98 Cal.App.4th 1047, 1052 [attorney's fees motions are almost always filed after entry of judgment in part because "before the entry of judgment, there is technically no prevailing party"].)

Two cases support our interpretation of section 1717's references to costs and recovery. First, *Bank of Idaho v. Pine Avenue Associates* (1982) 137 Cal.App.3d 5, 7, 15–16 (*Bank of Idaho*) considered whether a former version of section 1717 that defined the prevailing party as the party "entitled to recover costs of suit" authorized an interim award of attorney's fees to the plaintiff for succeeding on appeal in reversing a judgment following an order sustaining the defendant's demurrer without leave to amend. (*Id.* at p. 16.) The court concluded it did not, because the connection between fees and costs indicated "that there be some reckoning of the net success of the respective parties" that could not "be ascertained until the final termination of the suit." (*Ibid.*) The definition of prevailing party in section 1717 has changed since *Bank of Idaho*, and the interim request for fees here is different than a request for fees after an appeal that remands the case for further proceedings. But section 1717 maintains the connection between a fee award and the costs of suit, which gives *Bank of Idaho*'s analysis continuing relevance.

Second, *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 808–809 (*Bell*) considered whether Labor Code section 1194 authorized an interim award of attorney's fees following a summary adjudication ruling in favor of the plaintiffs

15

on one of the defendant's affirmative defenses in a class action suit for unpaid overtime. Labor Code section 1194, subdivision (a) provided that "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." *Bell* construed the use of "recover" in this provision as referring to recovery by judgment. (*Bell*, at p. 831.) It also deduced that attorney's fees were part of the judgment because interest and costs of suit, which were the other items in the phrase " 'including interest thereon, reasonable attorney's fees, and costs of suit,' " were part of a judgment. (*Ibid.*) *Bell* reasoned that it would be inconsistent for the statute to refer to one pre-judgment item with three other items awarded in a final judgment. (*Ibid.*) The same considerations apply to section 1717, which explicitly makes fees an element of costs and allows an award of attorney's fees to the party that "recovered" greater relief in the action on the contract. Indeed, *Bell* itself cited section 1717 as an example of a statute that did not permit interim fee awards, based on the language making fees an element of costs, *Bank of Idaho*, and another case applying the same principle. (*Bell*, at p. 833.)

The tenants rely on a different aspect of subdivision (b)(1), the instruction that a trial court shall determine the party prevailing on the contract "whether or not the suit proceeds to final judgment." (§ 1717, subd. (b)(1).) They argue this means

16

that fee awards can and must be made before final disposition of a case, so long as the contract claims have been resolved. On its face, this phrase does appear to support the tenants' position. However, the language seems somewhat peculiar if the Legislature intended it to authorize an interim award of attorney's fees, since it mentions the resolution of the entire suit, rather than the resolution of the contract causes of action. If the tenants' position were correct, a more natural way to phrase such a provision would be to say that a court must determine the prevailing party on the contract "upon resolution of the causes of action on the contract," or "when the causes of action on the contract have been resolved." Additionally, the tenants' interpretation of the phrase "whether or not the suit proceeds to final judgment" runs contrary to the other language referring to costs and referring to the prevailing party as having "recovered" in the action on the contract, making the statute ambiguous. (§ 1717, subds. (a), (b)(1).) To decide which interpretation of the statute is most reasonable, we therefore consider the legislative history of this aspect of the statute.

Our Supreme Court has already described the evolution of section 1717. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 872–874 (*Hsu*).) Until 1981, section 1717 defined a prevailing party as "the party in whose favor final judgment is rendered" and did not address the mechanism by which contractual attorney's fees should be awarded. (*Hsu*, at p. 872; Stats. 1968, ch. 266, § 1, p. 578.) In 1981, the Legislature changed the definition of prevailing party to "the party who is entitled to recover costs of

17

suit." (*Hsu*, at p. 873; Stats. 1981, ch. 888, § 1, p. 3399.)  At the same time, it added two other provisions.  First, it added the provision in what is now section 1717, subdivision (b)(2) stating that when "an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party." (*Hsu*, at p. 873.)  This was apparently intended to codify the holding of a prior Supreme Court case.  (*Ibid.*)  Second, the Legislature added the provision on which the tenants rely, which states that a trial court "shall determine who is the prevailing party, whether or not the suit proceeds to final judgment." (*Ibid.*) *Hsu* explained, "By this provision, the Legislature appears to have intended to abrogate the holding in *Samuels v. Sabih* (1976) 62 Cal.App.3d 335, 340, which had held that a defendant could not recover attorney fees under section 1717 if the action was dismissed for failure to prosecute." (*Ibid.*; see also *Bank of Idaho*, *supra*, 137 Cal.App.3d at pp. 15–16 [similarly interpreting the Legislature's intent behind the amendment].)

The tenants repeatedly quote *Hsu* and its description of the evolution of section 1717, but they ignore *Hsu*'s explanation of the purpose for the phrase on which they rely.  *Hsu*'s explanation does not support the tenants' position that the phrase was intended to allow for interim awards before the final conclusion of litigation.  Instead, the history shows that the phrase was a reaction to a court's construction of the prior statutory language defining a prevailing party as one who obtains a "final judgment." (*Samuels v. Sabih*, *supra*, 62 Cal.App.3d at p. 340.)  Read against this backdrop, the phrase shows the Legislature intended merely

18

to allow for fee awards when litigation concludes in something other than a final judgment, such as a dismissal. The amendment still presupposes that the litigation will be over before a trial court can make a fee award. (*Bank of Idaho*, *supra*, 137 Cal.App.3d at p. 15 [the amendment "does not imply that the suit need not be finally disposed of"]; *Presley of Southern California v. Whelan* (1983) 146 Cal.App.3d 959, 961 (*Presley*) [agreeing with *Bank of Idaho* that "this amendment merely allows a fee award where the final outcome of a lawsuit does not take the form of a final judgment but nevertheless one party wins and one loses; it does not allow an award where the suit is still ongoing"].) The simultaneous change at the time to defining prevailing party as "the party who is entitled to recover costs of suit" confirms this, since it maintained the tie between attorney's fees and an award of costs at the end of litigation, a tie that remains in other places in the current version of the statute.

In light of *Hsu*'s explanation of the purpose of this provision, we conclude that the phrase "whether or not the suit proceeds to final judgment" does not mean section 1717 allows for interim awards of attorney's fees, but rather supports the contrary interpretation that the Legislature intended attorney's fees under section 1717 to be awarded only at the conclusion of all litigation in a case, either in a final judgment or some other final disposition.

In addition to relying on the phrase "whether or not the suit proceeds to final judgment," the tenants emphasize that section 1717, subdivision (a) allows the party "who is determined

19

to be the party prevailing on the contract" to collect fees and subdivision (b)(1) defines the party prevailing on the contract as "the party who recovered a greater relief in the action on the contract." (§ 1717, subd. (b)(1).) They again turn to *Hsu*, which explained that in 1987 the "Legislature replaced the term 'prevailing party' with the term 'party prevailing on the contract,' evidently to emphasize that the determination of prevailing party for purposes of contractual attorney fees was to be made without reference to the success or failure of noncontract claims." (*Hsu, supra*, 9 Cal.4th at pp. 873–874.) They also quote *Hsu*'s statement that the "prevailing party determination is to be made only upon final resolution of the contract claims." (*Id.* at p. 876.) The tenants argue these provisions mean that fees can be awarded as soon as the trial court rules on the contract claims in a case, even when other issues remain to be decided.

The legislative history does not support the tenants' position. (*Gananian v. Wagstaffe* (2011) 199 Cal.App.4th 1532, 1542, fn. 9 ["We may take judicial notice of legislative history materials on our own motion"].) Our review of the legislative history confirms the evolution of the statute described in *Frog Creek, supra*, 206 Cal.App.4th at pages 526–530. As noted, *ante,* after 1981 section 1717 defined the prevailing party as the party entitled to recover costs. The Legislature first changed the definition to "the party who recovered a greater relief in the action on the contract" in 1986, inadvertently reverted to the prior definition in a later amendment that year, and restored the new definition in 1987. (*Id.* at pp. 527–529.) When the

Legislature originally changed the definition in 1986, it did so in order to conform to a simultaneous amendment to Code of Civil Procedure section 1032 that defined the prevailing party for the purposes of costs as " 'the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant.' " (*Frog Creek*, at p. 528.)  Thus, section 1717's new definition of prevailing party as the party who recovered a "greater relief in the action on the contract" was intended to parallel the "net monetary recovery language" added to Code of Civil Procedure section 1032.  (*Frog Creek*, at p. 529.)

Nowhere in the legislative history of section 1717 in 1986 or 1987 is there any indication that the Legislature intended to allow for interim awards of attorney's fees upon the resolution of the contract claims in a case even if further litigation remains on non-contract claims.  Instead, the Legislature's attempt to create consistency between section 1717 and the procedures for a prevailing party to collect costs reinforces our conclusion that attorney's fees are intended to be part of costs and therefore awarded, like all costs, at the conclusion of the litigation of an action.

*Hsu* and its interpretation of section 1717 are not to the contrary.  *Hsu* held that a trial court must determine which party prevailed on the contract by looking only at the outcome of the contract claims, without taking into account any equitable considerations unrelated to litigation success on the contract

21

claims. (*Hsu*, *supra*, 9 Cal.4th at pp. 876–877.) This holding indicates nothing about when a trial court must make this determination. Likewise, *Hsu*'s statement that a prevailing party determination "is to be made only upon final resolution of the contract claims" does not say what qualifies as a final resolution. (*Id.* at p. 876.) It is also significant that *Hsu* cited *Bank of Idaho* as support for this statement, which as we have seen supports our conclusion that section 1717 only allows an award of attorney's fees at the end of litigation. (*Ibid.*)

The tenants also cite *DisputeSuite.com, LLC v. Scoreinc.com, supra*, 2 Cal.5th 968, but that case does not address the question we face. *DisputeSuite* applied *Hsu*'s "final resolution" principle and held that the dismissal of an action based on forum non conveniens, with the expectation that the plaintiff would refile the case in another state, did not dispose of the parties' contractual dispute so the trial court could not make the necessary evaluation of the parties' relative success on the contract claims to permit a fees award. (*Id.* at pp. 972, 974.) We have already concluded that the trial court's summary adjudication order does not constitute a final resolution of the contract claims, so *Hsu*'s and *DisputeSuite*'s statements are not helpful to the tenants.[8]

---

[8] Valstock argues, based on *Bank of Idaho, supra*, 137 Cal.App.3d at page 16, that section 1717, subdivision (b)(2)'s statement that there will be no prevailing party if an action "has been voluntarily dismissed or dismissed pursuant to a settlement of the case" further indicates that the statute does not allow interim fee awards. (See also *Presley, supra*, 146 Cal.App.3d at pp. 961–962 [agreeing with *Bank of Idaho* on this point].) It is

22

Although the tenants do not cite it, *Burkhalter Kessler Clement & George LLP v. Hamilton* (2018) 19 Cal.App.5th 38 arguably supports their position.  That case relied on section 1717's "whether or not the suit proceeds to final judgment" language when it held that an award of attorney's fees under section 1717 prior to entry of final judgment was not premature. (*Burkhalter,* at pp. 46–47 [rejecting argument that the prevailing defendant should have waited to move for attorney fees until after the entry of judgment because "that is not required under section 1717"].)  However, the procedural history of that case is different.  The prevailing defendant had successfully demurred to the plaintiff's first amended complaint, and the plaintiff then amended the complaint and did not name that defendant as a party.  (*Id.* at p. 42.)  The trial court then granted the prevailing defendant's motion for dismissal with prejudice based on the plaintiff's failure to name her as a party in the second amended complaint.  (*Ibid.*)  Because the prevailing party was already dismissed from the case by the second amended complaint and the court engaged in no analysis of section 1717's language or history, this case is distinguishable and unpersuasive.

The last aspect of section 1717 that is relevant to our analysis is subdivision (c).  That subdivision directly addresses a scenario in which an action involves both contract and non-contract causes of action, stating, "In an action which seeks relief

---

unnecessary for us to consider this argument because we conclude other aspects of the statute make it sufficiently clear that it does not permit interim fee awards.

23

in addition to that based on a contract, if the party prevailing on the contract has damages awarded against it on causes of action not on the contract, the amounts awarded to the party prevailing on the contract under this section shall be deducted from any damages awarded in favor of the party who did not prevail on the contract.  If the amount awarded under this section exceeds the amount of damages awarded the party not prevailing on the contract, the net amount shall be awarded the party prevailing on the contract and judgment may be entered in favor of the party prevailing on the contract for that net amount." (§ 1717, subd. (c).)

This provision establishes the procedure for reconciling a party's award of attorney's fees on the contract portion of an action with the outcome of the rest of the action.  The existence of the process for such reconciliation indicates that contractual fee awards should be made only after the end of all litigation in a case, including litigation of non-contract claims.  The statute creates no exceptions for cases in which contract claims are disposed of earlier than the non-contract claims, such as through a demurrer or summary adjudication.  In such cases, if the party could have moved for attorney's fees immediately upon an interim resolution of the contract claims, there would be no reason to deduct an attorney's fees award in favor of the party prevailing on the contract from damages awarded against that party on non-contract claims or to reduce a fee award by the amount of an offsetting damages determination.  The party prevailing on the contract at the pre-trial stage would, like the

24

tenants did here, immediately move to collect their fees, leaving nothing to offset. This would contravene the Legislature's evident intent that a prevailing party receive only the net monetary amount to which it is entitled, rather than requiring the parties to transfer back and forth different amounts awarded under different theories.

### b. *The tenants' authorities*

The tenants cite several authorities that they contend support their position that section 1717 permits interim fee awards, but their reliance on these cases is misplaced.

*PNEC Corp. v. Meyer* (2010) 190 Cal.App.4th 66, 70–71, disapproved of in part by *DisputeSuite*, *supra*, 2 Cal.5th at page 979,[9] and *Winick Corp. v. Safeco Insurance Co.* (1986) 187 Cal.App.3d 1502, 1507 (*Winick*), both stated that litigation need not end in a final judgment for a prevailing party to obtain fees under section 1717. However, these statements concerned arguments that a final decision on the merits was necessary for a party to obtain a fee award, as opposed to a final termination of the litigation for procedural reasons or some other basis. Neither case discussed whether an award of fees is proper before completion of the litigation as a whole. In both cases, the litigation had ended before the trial court awarded fees, via a dismissal based on forum non conveniens in *PNEC Corp.* and

---

[9] The tenants' citation to this case fails to note that *DisputeSuite* disapproved it in part. We assume this failure was inadvertent, not an attempt to mislead the court about the extent to which *PNEC Corp. v. Meyer* is still good law. Counsel for the tenants would be well advised in the future to properly cite cases' subsequent history.

dismissal for failure to complete service in three years in *Winick*. (*PNEC Corp.*, at pp. 70–71; *Winick*, at pp. 1506–1508.)

Similarly, the tenants cite a Witkin treatise as agreeing that section 1717 contains no requirement of a final judgment. (7 Witkin, Cal. Proc. (6th ed. 2022) Judgment § 204.)[10]  The treatise does so state, but the statement merely reflects the statute's shift away from defining prevailing party by reference to a final judgment.  (*Ibid.*)  Tellingly, the tenants also ignore the next sentence in the treatise, which remarks, "However, final disposition is required."[11]  (*Ibid.*)

### c. *Other statutes and policy considerations*

To the extent that the proper interpretation of section 1717 remains in any doubt, a few final points cement our conclusion that section 1717 does not permit interim fee awards.

First, the Judicial Council's rule governing motions for attorney's fees under section 1717 is consistent with our

---

[10] The tenants cited the edition of the treatise in effect when they filed their brief.  (7 Witkin Cal. Proc. (5th ed. 2020) Judgment, § 195.)  We cite to the most recent edition, which is materially identical to the edition the tenants cited.

[11] The treatise relies on *Presley* for this conclusion, which applied a previous version of section 1717 but nonetheless supports our interpretation of the current statutory text, as discussed, *ante*.  (7 Witkin, Cal. Proc. (6th ed. 2022) Judgment § 205.)  The treatise also discusses several decisions that have reached different outcomes when considering whether interim fees are available after rulings on petitions to compel arbitration, some of which the tenants also cite.  (E.g., *Turner v. Schultz* (2009) 175 Cal.App.4th 974, 976; *Acosta v. Kerrigan* (2007) 150 Cal.App.4th 1124, 1125.)  We do not discuss these decisions because the rulings in those cases did not involve the merits of a dispute, so they are distinguishable.

26

interpretation of section 1717 as permitting fee awards only at the end of an action.[12] Rule 3.1702(b)(1) of the California Rules of Court[13] states that a "motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court—including attorney's fees on an appeal before the rendition of judgment in the trial court—must be served and filed within the time for filing a notice of appeal." Tying the deadline for an attorney's fees motion to the deadline for filing an appeal, as rule 3.1702 does, indicates that a trial court will only award fees at the end of an action, when the opposing party can also file an appeal. Additionally, this deadline runs only from a judgment, so the entry of a non-appealable order, such as a summary judgment or summary adjudication order, does not trigger it. (*Saben, Earlix & Associates v. Fillet*, *supra*, 134 Cal.App.4th at pp. 1029–1030.) However, we recognize that rule 3.1702 is not conclusive. It is only a rule and not a statute, so it could not contradict section 1717. (*Cal. Court Reporters Assn. v. Judicial Council of*

---

[12] While some attorney's fees claims can be raised in a memorandum of costs, claims for fees under section 1717 can only be raised via motion or upon entry of a default judgment, unless the parties stipulate otherwise. (Code Civ. Proc., § 1033.5, subds. (c)(5)(A) ["Attorney's fees allowable as costs pursuant to subparagraph (A) . . . of paragraph (10) of subdivision (a) shall be fixed either upon a noticed motion or upon entry of a default judgment, unless otherwise provided by stipulation of the parties"], (c)(5)(B) ["Attorney's fees awarded pursuant to Section 1717 of the Civil Code are allowable costs under Section 1032 as authorized by subparagraph (A) of paragraph (10) of subdivision (a)"].)

[13] All subsequent references to rules are to the California Rules of Court.

*Cal.* (1995) 39 Cal.App.4th 15, 18 ["rules of court are only valid to the extent that they comply with the constitutional charge to be 'not inconsistent with statute' "].)  It is also possible that the rule merely sets an outer deadline and permits attorney's fees motions at any point earlier in a case.  But this reading of the rule is less plausible because it would give parties such a wide range of time in which to claim fees and give the prevailing party a choice of when to request a fees award, which could create an opportunity for gamesmanship and mischief.[14]

---

[14] Valstock cites *580 Folsom Associates v. Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 30, for its statement, "Only when a final judgment has been entered in this matter, whether after further appellate review or not, will there be a prevailing party."  Valstock appears to imply that this means the trial court here could not award attorney's fees for the declaratory judgment cause of action until after the conclusion of all appeals from a final judgment.  *580 Folsom* is not apposite or persuasive here.  That decision affirmed a trial court's denial of a plaintiff's post-judgment motion for attorney's fees incurred in proceedings on a defendant's writ petition challenging a summary adjudication order, which petition the Court of Appeal had previously summarily denied.  (*Id.* at pp. 8–9, 29–30.)  The court's reasoning turned on the fact that the summary denial of the writ petition was not a final adjudication or determination of a cause, so the plaintiff did not prevail on it.  (*Id.* at p. 30.)  The court did not consider whether the plaintiff's victory in the trial court upon final judgment entitled it to fees for the interim writ proceedings.  We do not construe *580 Folsom* as holding that fee awards under section 1717 for proceedings in the trial court will always be premature until all appellate proceedings are complete. (*Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 368 ["Although a prevailing party at trial may not be the prevailing party after an appeal, it has been held that a motion for attorney fees is not premature despite the filing of a notice of appeal"], superseded by

28

Second, interim attorney's fees awards are anomalous in civil litigation.[15]  Another court recently made the same point, rejecting a claim to interim fees under a different statute because there was no indication the Legislature intended "to depart from well-established principles that fees and costs are ordinarily not granted for interim success, and that the prevailing party is determined, and fees and costs awarded, at the conclusion of the litigation." (*Artus v. Gramercy Towers Condominium Assn.* (2018) 19 Cal.App.5th 923, 927 [rejecting claim for fees for interim success under the Davis-Stirling Common Interest Development Act (§§ 4000 et seq.) where party lost at trial].)  Our research has disclosed that some decisions have held that certain California statutes allow for interim fee awards, but they are few and distinguishable.[16]

statute on other grounds as stated in *Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1197.)

[15] We do not consider here interim fee awards in the distinct contexts of probate and family law, which are governed by different statutes and considerations.  (See, e.g., *People ex rel. Harris & Becerra v. Shine* (2017) 16 Cal.App.5th 524, 533–534 [discussing principle of interim fee awards in litigation concerning a trust estate]; *Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 242 [Family Code authorizes pendente lite attorney's fee awards in various types of proceedings to give parties equal opportunity to present their arguments].)

[16] The tenants cite *Animal Lovers Volunteer Ass'n, Inc. v. Carlucci* (9th Cir. 1989) 867 F.2d 1224, 1225, abrogated on other grounds by *Sorenson v. Mink* (9th Cir. 2001) 239 F.3d 1140, 1149, but apart from referring to a prevailing party, the federal statute at issue in that case does not resemble section 1717.  (See also *Bell*, *supra*, 87 Cal.App.4th at pp. 832–833 ["The federal decisions authorizing interim attorney fee awards are predicated in large

The tenants point out that courts have recognized that Code of Civil Procedure section 1021.5 allows for interim awards of private attorney general attorney's fees. (E.g., *Urbaniak v. Newton* (1993) 19 Cal.App.4th 1837, 1844; *Bell, supra,* 87 Cal.App.4th at p. 833 ["Apart from the sphere of private attorney general actions under Code of Civil Procedure section 1021.5, the award of interim attorney fees in California remains a wholly untested and novel concept that is ordinarily barred by explicit statutory language"].) But Code of Civil Procedure section 1021.5 permits fee awards for enforcing important rights and conferring benefits on the public before the conclusion of a case, and those objectives can be achieved at interim stages of litigation. (*Bell*, at p. 833.) This contrasts with section 1717's limitation of fees to the party "who *recovered* a greater relief in the action on the contract." (§ 1717, subd. (b)(1), italics added; *Bell*, at p. 833.) Additionally, interim fees are available under Code of Civil Procedure section 1021.5 only when a benefit is " 'secure.' " (*Urbaniak*, at p. 1844.) While some decisions have upheld awards of fees after appeals that upheld a portion of a party's victory while requiring further proceedings on other claims, we are aware of no decision affirming an award of fees under Code of Civil Procedure section 1021.5 after an interim ruling that has not already been upheld or directed by a higher court. (E.g., *Bouvia v. County of Los Angeles* (1987) 195 Cal.App.3d 1075, 1080, 1086 [plaintiff was entitled to fees

measure on circumstances and legislative history not present" in cases under California law].)

under Code Civ. Proc., § 1021.5 for obtaining writ from appellate court directing trial court to issue an injunction, despite claims for damages that remained pending]; *Sundance v. Municipal Court* (1987) 192 Cal.App.3d 268, 271 [plaintiffs were entitled to fees under Code Civ. Proc., § 1021.5 for obtaining order affirmed by Supreme Court, even though further litigation was contemplated].)

The tenants also argue that interim fee awards are permissible under section 3426.4 and statutes providing for discovery sanctions based on fee-shifting provisions. Section 3426.4 allows a court to award attorney's fees to a prevailing party in a misappropriation of trade secrets case if "a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists." The statute does not explicitly allow for interim fee awards, and the tenants cite no authority holding that it does. Even if it did permit interim fee awards, such as perhaps for prevailing in preliminary injunction proceedings, it does not condition such an award on recovery, like section 1717, so it has little bearing here. The discovery statutes do explicitly require interim monetary sanctions upon rulings on discovery motions. (E.g., Code Civ. Proc., § 2030.290, subd. (c) ["The court shall impose a monetary sanction . . . against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel a response to interrogatories, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of

31

the sanction unjust"].)  But the language of these statutes does not resemble section 1717, either.

*Monterossa v. Superior Court* (2015) 237 Cal.App.4th 747, 754 held that a subdivision in section 2924.12, a provision in the Homeowner's Bill of Rights (Civil Code, §§ 2920.5, 2923.4–2923.7, 2924, 2924.9–2924.12, 2924.15, 2924.17–2924.20) that provides certain foreclosure protections, authorizes fee awards when a plaintiff obtains only a preliminary injunction and not a permanent injunction.  Section 2924.12 authorizes fees for a plaintiff who obtains injunctive relief or an award of damages, and as *Monterossa* noted, under that "unique statutory scheme, in many cases the best a plaintiff can hope to achieve is a preliminary injunction." (*Monterossa*, at p. 754.)  The same is not true in civil litigation concerning contracts.

*Close v. Sotheby's, Inc.* (2018) 909 F.3d 1204, 1207, 1213, which the tenants cite, affirmed an interim award of fees under subdivision (a)(3) of section 986, the Resale Royalties Act.  *Close* engaged in no analysis of the statute at issue and the only California state court cases it cited were *Winick* and *Urbaniak v. Newton*, both of which are inapposite.  (*Id.* at p. 1213.)  *Close* also has not been cited by any California state court.

As a last example, a defendant who succeeds in striking only part of a complaint under the anti-SLAPP statute, as well as a plaintiff who succeeds in defeating a frivolous anti-SLAPP motion, can immediately collect attorney's fees.  (Code Civ. Proc., § 425.16, subd. (c); *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 946.)  But the statute creating the anti-

SLAPP motion procedure includes the provision authorizing such fees; there is no similar provision in the summary judgment statute authorizing an immediate award of contractual attorney's fees. The express provision authorizing interim fee awards in section 425.16, subdivision (c) serves to underscore that such awards are the exception in civil litigation, not the rule.

Given the wealth of statutes permitting attorney's fee awards, the absence of any other provisions besides these few allowing for interim fee awards is significant. (See Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2008) ¶ 17:545 ["Literally hundreds of California statutes authorize court awards of attorney fees in specific types of actions"].)

Finally, our interpretation of section 1717 is preferable as a matter of trial and appellate procedure. Valstock points out that the unappealability of the summary adjudication ruling, combined with the appealability of the fee award, means Valstock must accept in this fee appeal that the tenants prevailed on the contract claims. Only later, in an appeal after the end of the litigation in the trial court, can Valstock challenge the merits of the summary adjudication ruling. Valstock argues this sequence will preclude it from being able to challenge the merits of the summary adjudication in a way that effectively allows for reversal of the fee award.

Although Valstock does not cite it, *Bell* supports their concern. It pointed out, "The award of interim attorney fees would present peculiar problems in a statute that conditions the

33

right to recover attorney fees on the plaintiff's recovery, and we find nothing in the language of Labor Code section 1194 providing guidance as to when, and under what conditions, an interim fee may be granted. The most plausible explanation is that the Legislature contemplated only an award following final judgment, governed by familiar statutory procedures and rules of court." (*Bell*, *supra*, 87 Cal.App.4th at p. 831.) *Bell* also noted "the awkward dilemmas that would be presented by an interim award," which the trial court had sought to avoid by retaining jurisdiction to adjust or refund the fees award, depending on the outcome of later proceedings. (*Ibid*.) *Bell* was reluctant to believe the Legislature intended to authorize an award of fees subject to unrestricted adjustment or refund later in the litigation, since "[s]uch a process would run counter to the principle that, when differing interpretations are possible, ' "[i]t is the duty of the courts within the framework of the statutes passed by the Legislature, to interpret the statutes so as to make them workable and reasonable." ' " (*Id*. at pp. 831–832.)

While it would technically be possible for us to reverse an interim fee award under section 1717 if we were to reverse later the summary adjudication order on which it is based, *Bell* indicates that Valstock's concerns about the sequencing are valid. If the tenants have enforced an interim fee award before judgment, as they have already tried to do here, Valstock will need to claw back the fees from the tenants if it succeeds in a later appeal from a final judgment or if some subsequent development in the litigation affects the amount of fees owed.

34

Such a clawback could prove difficult to collect, unless the prevailing party sets the funds aside until all appeals are final, which would call into question the point of the award in the first place.

The appealability of a fee award, like the one the trial court entered here against Valstock, mitigates some of these concerns but does not eliminate them. Valstock was able to stay enforcement of the award by appealing it and triggering the automatic appellate stay. (Code Civ. Proc., § 916, subd. (a).) But if we upheld the trial court's award, that ruling would likely become final long before an appeal from a final judgment in the action could be resolved, so the appeal of the fee award would not avoid the problem entirely. Of course, this aspect of the appellate stay, too, calls into question the purpose of an interim fee award. The appealability of the award, combined with the length of time it takes for a Court of Appeal to dispose of an appeal, means an interim fee award is often unlikely to provide much help to a party facing a mismatch in litigation resources. Moreover, if a party can avoid having to pay an interim fee award only by appealing it, we can expect to see parties file appeals with questionable merit purely to avoid (or at least delay) having to pay fees in the middle of a case. The Courts of Appeal will also have to rule on appeals from fee awards that could later become moot if the underlying orders are reversed. While perhaps not the most important concern, the potential for waste of appellate judicial resources, when other litigants are waiting for their own

appeals to be resolved, counsels against allowing interim fee awards.

The tenants suggest Valstock could have avoided such issues by seeking writ review of the summary adjudication order. This is true, but they cite nothing to suggest Valstock was required to seek writ review, and it was not. (*Angelica Textile Services, Inc. v. Park* (2013) 220 Cal.App.4th 495, 504 ["there is no requirement in our summary judgment statute that parties that wish to challenge orders granting summary adjudication do so by way of a writ petition"].) They also argue that Valstock could have suggested to the trial court that it should sua sponte reconsider the summary adjudication, under the authority recognized in *Goel, supra,* 35 Cal.4th 1094. Again, however, they cite nothing that obligated Valstock to pursue this course.

*Bell* avoided these problems by reviewing the "decisional underpinning" of the fees award—meaning the summary adjudication order—under Code of Civil Procedure section 906. (*Bell, supra,* 87 Cal.App.4th at pp. 809, 829.) That statute allows an appellate court to review "any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from." (Code Civ. Proc., § 906.) While we agree with much of *Bell*'s analysis regarding interim fee awards, we part company with it on its application of this statute.[17] It is established law that a summary adjudication ruling is not appealable, while a fee award "is appealable as a final determination on a collateral matter,

_____

[17] No subsequent case has followed *Bell* on this point.

36

severable from the general subject of the litigation." (*Smith v. Krueger* (1983) 150 Cal.App.3d 752, 756; *Tucker Ellis LLP v. Superior Court* (*Nelson*), *supra*, 12 Cal.App.5th at p. 1240.)  If a reviewing court can be forced to review a summary adjudication ruling in an appeal from a subsequent fee award, it would call into question whether the fee award is truly collateral.  It would circumvent the one final judgment rule that precludes immediate appeals of summary adjudication rulings.  It would also give a party who prevails on a summary adjudication motion ruling the power to expedite or delay appellate review of the ruling by choosing whether or not to file a motion for an interim attorney's fees award that could then be appealed.  Holding that section 1717 does not permit interim fee awards, as we do, avoids these concerns.

## DISPOSITION

The trial court's order is reversed, without prejudice to consideration of a subsequent motion for attorney's fees at the appropriate time.  The parties shall bear their own costs on appeal.

BROWN, J.

WE CONCUR:

POLLAK, P. J.
STREETER, J.

*Chen et al. v. Valstock Ventures, LLC, et al.* (A161885)

37

Trial Court: San Francisco City & County Superior Court

Trial Judge: Hon. Ethan P. Schulman

Counsel: California Appellate Law Group LLP, Johanna Schiavoni, Jennifer Teaford; Kronenberg Law PC, William S. Kronenberg, V. Sathienmars for Defendants and Appellants.

Ropes & Gray LLP, Douglas H. Hallward-Driemeier, Rocky C. Tsai; Winifred V. Kao for Plaintiffs and Respondents.